# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 11-1139


**SABINE RIVER AUTHORITY**

**VERSUS**

**ALL TAXPAYERS, ET AL.**


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 63,867
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters and
Marc T. Amy, Judges.


**REVERSED AND REMANDED.**

William Lee Schuette, Jr.
Fred Lee Chevalier
Matthew W. Kern
Jones, Walker, Waechter, Poitevent, Carrère & Denègre, L.L.P.
8555 United Plaza Boulevard, 5th Floor
Baton Rouge, LA   70809
(225) 248-2082
COUNSEL FOR PLAINTIFF/APPELLANT:
      Sabine River Authority

**AMY, Judge.**

The Sabine River Authority (the "SRA") seeks to commence a bond initiative to generate revenue. The SRA filed a motion for judgment seeking a judicial declaration that the bonds and the means by which they would be secured and paid were valid. No interested person challenged the bond resolution or the motion for judgment. The trial court denied the SRA's motion, finding that although the SRA complied with the statute governing bond validation, the court had concerns about the funds to be used for the security of the bonds. The SRA filed this expedited appeal. For the following reasons, we reverse the judgment of the trial court and remand for entry of a judgment consistent with this opinion.

## Factual and Procedural Background

Pursuant to La.R.S. 38:2321, the SRA exists as a conservation and reclamation district comprised of the multi-parish territory lying within the watershed of the Sabine River and its tributary streams. It is "an agency and instrumentality of the state of Louisiana[.]" *See* La.R.S. 38:2324. The SRA is statutorily authorized to enter into contracts and agreements for the sale of waters over which it has jurisdiction. La.R.S. 38:2325. Further, the SRA is authorized to issue bonds in the carrying out of its corporate objectives. *Id.*

This matter stems from a May 26, 2011 resolution (the Bond Resolution), wherein the SRA authorized the issuance of Sabine River Authority Revenue Bonds (the Bonds) for the purpose of (1) financing repairs and improvements to the Sabine River Diversion System and associated equipment, (2) funding a reserve fund, and (3) paying costs related to the issuance of the Bonds. The SRA explains that the Bonds are to be secured by and are payable from the revenues received from contracts for the sale of water from the Sabine River Diversion Canal. Additional and subordinate security for the payment of the Bonds is to be provided from a Water Reservation and

Sale Agreement (the Water Sale Agreement) to be executed by and between the SRA and Toledo Bend Partners, LP.

On July 21, 2011 and in accordance with La.R.S. 13:5123,[1] the SRA filed a Motion for Judgment with the trial court seeking an Order designating that certain actions be taken in pursuit of the judicial validation of the Bonds. The SRA represented in the motion that, on June 1, 2011, it had published the Bond Resolution in the *Sabine Index*, a general circulation newspaper serving Sabine Parish, as required by La.Const. art. 6, § 35(B). The SRA stated in the motion that, although any interested person could challenge the issuance of municipal bonds by filing a motion for judgment within a thirty-day peremptive period, the "period expired on July 1, 2011 without any actions being taken to contest the legality of the Bonds, the revenues and the security pledges to the payment thereof or any other matters related to the Bonds."

Pursuant to the filing, the district court ordered the publication of the motion for judgment and the accompanying court order as required by La.R.S. 13:5124.[2] The

---

[1] Louisiana Revised Statutes 13:5123 provides that:

> The governing body of any governmental unit proposing to issue or which is in the process of issuing bonds or has provided a new or different source of payment for outstanding bonds may bring at any time a proceeding in the district court having original jurisdiction over the matter, and in which such governmental unit is domiciled to establish the validity of such bonds, the legality of the election, if any, authorizing the issuance of such bonds, the validity of the action taken to provide a new source of security for outstanding bonds and all proceedings theretofore taken in connection with the authorization or issuance of such bonds and the validity of the tax, any lease or other means provided for the payment of such bonds, and the validity of all pledges of revenues and of all covenants and provisions which constitute a part of the contract between such governmental unit and the holders of such bonds. Such proceedings shall be brought by filing a motion for judgment describing such bonds and the proceedings had relative to the issuance thereof or the providing of a new or different source of payment therefor and alleging that such bonds when issued will be valid and legal obligations of the issuing governmental unit or that the action taken with respect to providing a new or different source of payment is valid and legal. In such motion for judgment the taxpayers, property owners and citizens of the issuing governmental units, including nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds shall be made parties defendant.

[2] With regard to publication of the motion for judgment and related notifications, La.R.S. 13:5124 provides:

2

record indicates that the SRA complied with this order for publication by publishing the required text in the *Sabine Index* on July 27, 2011 and August 3, 2011. The record also included the evidence of the related notifications. The district court scheduled a hearing for August 16, 2011.

The SRA asserted, and the record indicates, that between the date the Bond Resolution was published and the date of the hearing, no challenges to the Bonds, the Bond Resolution, or the Water Sale Agreement were asserted, and no oppositions to the SRA's motion for judgment were filed. At the August 16th hearing, no party appeared in opposition to the SRA's motion. The SRA submitted its exhibits, including an affidavit of publication, into the record.

At the conclusion of the hearing, the trial court took the matter under advisement. The trial court later denied the SRA's motion, finding that although the

---

A. (1) All such parties shall be served by publishing the motion for judgment in a newspaper published in or having general circulation in such governmental unit in the manner hereinafter set forth. Upon the filing of the motion for judgment, the court shall enter an order requiring the publication of the motion two times within a period of fifteen consecutive calendar days from the date of the issuance of the order, specifying the dates for publication thereof with the first publication as hereinabove provided to be not later than eight days from and after the date of the issuance of the order, and at the same time fix a time and place for hearing the proceeding, which time and place shall be published with the motion for judgment. The date fixed for the hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment.

(2) By publication of such motion for judgment, all taxpayers, property owners, and citizens of such governmental unit including nonresidents owning property or subject to taxation therein, and all other persons having or claiming any right, title, or interest in any property or funds to be affected in any way by the issuance of such bonds, or having or claiming to have any right or interest in the subject matter of such motion for judgment, shall be considered as parties defendant in such proceedings and as having been duly served, and the court shall have jurisdiction of them the same as if each of them were named individually as a party defendant in such motion for judgment and personally served with process.

B. The party filing a motion for judgment shall also cause notification of said filing to be made upon the State Bond Commission and the attorney general by mailing a certified copy of the motion for judgment by registered or certified mail, with return receipt requested. No judgment can be rendered until the party filing a motion for judgment files in the record an affidavit of the individual who mailed the motion for judgment to the State Bond Commission and attorney general, showing that it was properly addressed, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt thereon.

SRA complied with La.R.S. 13:5121, *et seq.*, the court had concerns regarding the revenue and security of the Bonds.

The SRA filed this appeal, asserting that: (1) the trial court erred in denying the SRA's motion for judgment when no timely challenge had been asserted and (2) the trial court erred in denying the SRA's motion for judgment based on its concerns regarding the adequacy of the Bonds' security when no timely challenge had been asserted.

## Discussion

*Standard of Review*

As this case poses a question of law, this court reviews the record de novo on appeal. An

> [a]ppellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. If the trial court's decision was based on its erroneous interpretation or application of the law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference by the reviewing court.

*Citgo Petroleum Corp. v. Frantz*, 03–88, p. 3–4 (La.App. 3 Cir. 6/4/03), 847 So.2d 734, 736 (citations omitted)(quoting *Conagra Poultry Co. v. Collingsworth*, 30,155 (La.App. 2 Cir. 1/21/98), 705 So.2d 1280), *writ denied,* 03–1911 (La. 10/31/03), 857 So.2d 484.

*Bond Resolutions and Peremption*

As extensively discussed by the supreme court in *Denham Springs Econ. Dev. Dist. v. All Taxpayers*, 05-2274 (La. 10/17/06), 945 So.2d 665, Louisiana constitutional and statutory provisions provide an exclusive method to expedite all proceedings involving the validity of bonds. This framework recognizes the unique nature of municipal bonds and the importance of insuring their marketability. *Id.*

Louisiana Constitution Article 6, § 35(B) provides:

Every ordinance or resolution authorizing the issuance of bonds or other debt obligation by a political subdivision shall be published at least once in the official journal of the political subdivision or, if there is none, in a newspaper having general circulation therein. For thirty days after the date of publication, any person in interest may contest the legality of the ordinance or resolution and of any provision therein made for the security and payment of the bonds. After that time, no one shall have any cause of action to test the regularity, formality, legality, or effectiveness of the ordinance or resolution, and provisions thereof for any cause whatever. Thereafter, it shall be conclusively presumed that every legal requirement for the issuance of the bonds or other debt obligation, including all things pertaining to the election, if any, at which the bonds or other debt obligation were authorized, has been complied with. No court shall have authority to inquire into any of these matters after the thirty days.

Section 35(B) clearly creates a thirty-day peremptive period for contesting the legality of a bond resolution and any provisions made for the security and payment of the bonds. According to the above text, the peremptive period commences with publication of the bond resolution in the newspaper. During the thirty-day period, any person in interest may present to the court any concerns about the bond resolution. As the supreme court stated:

After the expiration of the thirty-day period, the right to contest is extinguished or perempted, and it is conclusively presumed all legal requirements for the issuance of the bonds have been satisfied and that the bonds, the legal documents providing for the bonds, and all security for the bonds are legal. Moreover, no court has authority to consider any challenge after the thirty-day peremptive period.

*Denham Springs*, 945 So.2d at 686.

Further, this constitutional provision governing the issuance of bond resolutions goes hand in hand with the statutory provisions governing bond validation.

*Bond Validation Procedures*

Louisiana Revised Statutes 13:5121, *et seq.*, provides the exclusive manner by which any type of suit, action, or proceeding affecting the validity of government

5

bonds can be properly asserted. *See* La.R.S. 13:5122;[3] *See also Smith v. Parish of E. Baton Rouge*, 515 So.2d 632 (La.App. 1 Cir.), *writ denied*, 515 So.2d 1100 (La. 1987). This procedure, discussed above, can be seen in the SRA's actions in this case.

To validate the bonds, La.R.S. 13:5123 provides that the governmental unit may file a motion for judgment describing the bonds and the proceedings that occurred relative to their issuance and alleging that the bonds, when issued, will be valid and legal obligations of the issuing governmental unit. In such motion for judgment, the taxpayers, property owners, and citizens of the issuing governmental unit, including nonresidents owning property or subject to taxation therein, and all other persons interested in or affected in any way by the issuance of such bonds, shall be made parties defendant. *Id.*

Following the filing of the motion for judgment, the trial court shall enter an order requiring the publication of the motion twice in a general circulation newspaper in the district within a period of fifteen consecutive calendar days from the date of issuance of the order. La.R.S. 13:5125. The court shall also fix a time and place for

_____

[3] In La.R.S. 13:5122, the legislature expressed that:

  All suits, actions and proceedings of whatever nature affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale thereof, or the election, if any, authorizing the issuance of said bonds shall be brought only in accordance with the provisions of this Title. These provisions shall supersede all other acts and statutes on the subject and be controlling in all such cases notwithstanding the provisions of any other law or charter to the contrary; provided, however, nothing herein contained shall affect, change, alter or modify in any way any preemptive or prescriptive period for the contesting of bonds of governmental units or elections authorizing their issuance, established pursuant to the constitution and statutes of this state which shall continue to govern the time within which actions covered thereby may be filed. It is hereby declared that it is the intention of the legislature in enacting this law to provide a uniform, expeditious and equitable procedure with due regard for the public fisc and rights of persons in interest for the judicial determination of the validity of bonds and related proceedings where material and substantial questions with regard thereto are involved or a judicial determination of issues relating to bonds is necessary to insure the marketability of bonds in investment channels. It is not the intention of the legislature to require or to encourage the validation of all bonds by the judiciary.

6

hearing the proceeding, and that time and place shall be published with the motion for judgment.[4] *Id.*

Thereafter, any party defendant may answer such motion for judgment within seven days after the second publication thereof, but not thereafter. La.R.S. 13:5126. Any property owner, taxpayer, citizen, or other person in interest may become a party to the proceedings by pleading to the motion within seven days after the second publication thereof, or thereafter by intervention upon leave of court. *Id.*

*The SRA's Bond Resolution and Validation Procedure*

We find that Louisiana Constitution Article 6, § 35(B) and the peremptive period contained therein applies to the SRA's Bond Resolution and is the appropriate inquiry in this case.[5] It is undisputed that the SRA's Bond Resolution was published on June 1, 2001 in the *Sabine Index*, a general circulation newspaper serving Sabine Parish. According to the constitutional language addressed above, any person of interest had thirty days from the publication to contest the legality of the Resolution and any provisions made for the security and payment of the Bonds. After that thirty-day period, the right to contest the Bond Resolution and the security provisions terminated, and a conclusive legal presumption of the validity of the bonds and the security provisions was established. Following that time period, the court had no authority to consider any challenges or to inquire into those matters.

The thirty-day publication period expired on July 1, 2011. The record indicates that, hearing no objections or concerns by any interested persons, the SRA began the process of bond validation by filing a motion for judgment on July 21, 2011. The

---

[4] The date fixed for hearing shall be at least ten days, but not more than thirteen days, after the second publication of such motion for judgment. La.R.S. 13:5125.

[5] We would note that the SRA also makes reference to La.R.S. 33:9038.4(L), a statute at issue in the case before the supreme court in *Denham Springs,* 945 So.2d 665. However, nothing in the record in this case indicates that the Bond Resolution at issue herein involves a sales tax increment financing plan. Thus, we do not consider the text of that statute.

7

SRA complied with the order of the district court and twice published the motion for judgment in the *Sabine Index* within the time periods articulated in La.R.S. 13:5125. No person objected to the motion for judgment or sought to intervene with the court either prior to the August 16th hearing or at the hearing itself.[6]

Following the hearing, the trial court denied the SRA's motion for judgment. In doing so, the court acknowledged that the SRA complied with La.R.S. 13:5121, but it listed concerns regarding the funds to be used as security for the Bonds. We find error in that judgment.

Contrary to the trial court's inquiry, the trial court's analysis should have started and ended with consideration of the SRA's compliance with the provisions of La.Const. art. 6, § 35(B) and La.R.S. 13:5121, *et seq.* The Bond Resolution provided information notifying the public of the relevant provisions of the Water Sale Agreement and the other contracts the SRA sought to enter to secure the payment of the Bonds. The SRA published the Bond Resolution in a newspaper of general circulation in the area, and no interested persons objected during the thirty-day peremptive period. Thus, the right to challenge the provisions made for the security and payment of the bonds was perempted. As noted in *Denham Springs*, 945 So.2d at 688, "[p]eremption is upheld even when it results in harsh consequences."

Once the right to challenge the Bond Resolution extinguished, a conclusive legal presumption of the validity of the Bonds and the security provisions was established pursuant to La.Const. art. 6, § 35(B). It is clear that the trial court was presented with evidence that any challenge to the Bond Resolution was perempted. Further, all evidence presented indicated that the validation procedures outlined in La.R.S. 13:5121, *et seq.* were followed. In fact, the trial court found that the SRA complied with La.R.S. 13:5121, *et seq.* Thus, the trial court's concerns regarding the

---

[6] Moreover, no party has sought to intervene in this appeal.

8

funding for the Bonds was irrelevant, and its denial of the SRA's motion for judgment was erroneous.  Accordingly, we reverse the judgment of the trial court and remand this matter to the trial court for entry of judgment validating the Bonds and the underlying security.

## DECREE

For the above reasons, we reverse the judgment of the trial court and remand this case for entry of a judgment consistent with this opinion.

**REVERSED AND REMANDED.**