STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CA 0536

STANTEC CONSULTING SERVICES INC,
V&A CONSULTING ENGINEERS, INC.,
AND PATTERSON PUMP COMPANY

VERSUS

KIEWIT LOUISIANA CO., M.R. PITTMAN GROUP, L.L.C.,
AND TRAYLOR BROS., INC., JOINT VENTURERS
OPERATING UNDER THE TRADE NAME
PCCP CONSTUCTORS, A JOINT VENTURE

Judgment Rendered: ___DEC 3 0 2025___

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 750670

The Honorable Wilson E. Fields, Judge Presiding

* * * * *

| | |
|---|---|
| Albert D. Clary<br>J. Weston Clark<br>Alec B. Keane<br>Baton Rouge, Louisiana | Attorneys for Co-Plaintiff/Appellant,<br>V&A Consulting Engineers, Inc. |
| David L. Guerry<br>Baton Rouge, Louisiana<br>Ross D. Ginsberg, *Pro Hac Vice*<br>Matthew A. Marrone, *Pro Hac Vice*<br>Atlanta, Georgia | Attorneys for Co-Plaintiff/Appellant,<br>Stantec Consulting Services, Inc. |
| Matthew W. Bailey<br>Katherine M. Cook<br>Baton Rouge, Louisiana | Attorneys for Co-Plaintiff/Appellant,<br>Patterson Pump Company |

Steven W. Usdin
Laura M. Blockman
New Orleans, Louisiana
Grant H. Willis, *Pro Hac Vice*
Washington, DC

Attorneys for Defendants-Appellees,
Kiewit Louisiana Co.,
M.R. Pittman Group, L.L.C., and
Traylor Bros., Inc., doing business as
PCCP Constructors, Joint Venture

\* \* \* \* \*

BEFORE: LANIER, WOLFE, AND HESTER, JJ.

2

**WOLFE, J.**

This appeal concerns a trial court judgment sustaining a dilatory exception pleading the objection of prematurity based on an arbitration agreement and dismissing, without prejudice, a petition for declaratory judgment regarding alleged perempted claims. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

In June of 2012, the United States Army Corps of Engineers ("the Army Corps") solicited proposals to design and construct Permanent Canal Closures and Pump Stations (the "Project") in and around New Orleans, Louisiana. The Army Corps awarded the Project contract to PCCP, a Joint Venture, made up of three individual entities, Kiewit Louisiana Co., M.R. Pittman Group, L.L.C., and Traylor Bros., Inc. (collectively "PCCP"). PCCP, in turn, subcontracted and with many other entities to perform the work on the Project. Three subcontractor entities are relevant to this appeal: Stantec Consulting Services, Inc., V&A Consulting Engineers, Inc., and Patterson Pump Company (collectively "the Plaintiffs").[1]

The Army Corps and PCCP agreed that substantial completion of the Project occurred in December 2017. Thereafter, in April 2023, the Army Corps asserted five separate claims against PCCP regarding alleged problems/defects, some of which implicated work performed by PCCP's subcontractors, including the Plaintiffs. While PCCP and the Army Corps discussed solutions to the claims, the Plaintiffs and PCCP agreed to enter into an Arbitration Agreement to resolve the respective responsibility of each of the parties for the Army Corps' claims.[2] The

---

[1] PCCP and Stantec entered a subcontract for design on the Project; V&A is an engineering subconsultant to Stantec; and Patterson manufactured and supplied pumps pursuant to another subcontract.

[2] Other subcontractors and subconsultants, River City Environmental Services, LLC, Fugro USA Land, Inc., and Infilco Degremont, Inc., now known as Suez Water Technologies, were parties to the Arbitration Agreement as well, but the only relevant parties for purposes of this appeal are PCCP and the Plaintiffs.

Arbitration Agreement was executed between PCCP and the Plaintiffs, with an effective date of July 18, 2023.

PCCP filed an arbitration demand with JAMS Mediation, Arbitration, and Alternative Dispute Resolution Services ("JAMS"), the arbitral body the parties agreed upon, on July 20, 2023, but then immediately requested that JAMS stay the arbitration proceedings so that PCCP could pursue resolution of its disputes with the Army Corps and to allow the parties to the Arbitration Agreement to work toward resolution of their disputes regarding their respective liability. During the negotiations in the course of the stay, an issue arose as to whether the Arbitration Agreement excluded perempted claims. On May 3, 2024, PCCP notified the Plaintiffs of its intention to lift the previously agreed-upon stay and to re-initiate the arbitration proceedings related to the Project's alleged defects as asserted by the Army Corps. On July 12, 2024, the Plaintiffs filed a petition for declaratory judgment against PCCP in the Nineteenth Judicial District Court, seeking a declaration that perempted claims were not encompassed in the Arbitration Agreement, that the Arbitration Agreement was null to the extent that its scope included perempted claims, and that peremption had extinguished PCCP's claims against the Plaintiffs relating to their work on the Project. On July 16, 2024, PCCP submitted a proposed procedure for arbitrator selection to JAMS and requested that the arbitration move forward.

In response to the Plaintiffs' petition, PCCP filed a dilatory exception raising the objection of prematurity on September 11, 2024. PCCP asserted that the Plaintiffs' petition was premature because of the valid Arbitration Agreement that existed between the parties, where the parties expressly agreed to arbitrate "Any Disputes ... relating to the Project[,]" including peremption. PCCP requested that the trial court dismiss the Plaintiffs' petition in order to allow the parties to resolve their disputes through the agreed-upon arbitration process. The Plaintiffs opposed

4

PCCP's exception of prematurity. The trial court heard the exception on December 9, 2024, and took the matter under advisement. On January 29, 2025, the trial court signed a judgment sustaining PCCP's exception of prematurity and dismissing, without prejudice, the Plaintiffs' petition for declaratory judgment. The Plaintiffs appealed asserting that the trial court legally erred in failing to resolve the issue of peremption before compelling arbitration.[3]

## LAW AND ANALYSIS

Louisiana Code of Civil Procedure article 926(A)(1) provides for the dilatory exception pleading the objection of prematurity. An action is premature if it is brought before the right to enforce the obligation sued on has accrued. See La. Code Civ. P. art. 423. The objection of prematurity raises the issue of whether the judicial cause of action has yet to come into existence because some prerequisite condition has not been fulfilled. **Crosby as Trustee of Aaron Guidry Trust v. Crosby Enterprises, LLC**, 2023-1338 (La. App. 1st Cir. 8/9/24), 395 So.3d 296, 300.

The defense that the Plaintiffs in this suit are not entitled to judicial relief because of a valid agreement to submit claims to arbitration may be raised by the dilatory exception of prematurity. **Crosby**, 395 So.3d at 300. Since PCCP raised the failure to arbitrate by means of the exception of prematurity, PCCP had the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature. **Id**. An exception of prematurity raises a question of law subject to *de novo* review. **Id**.

Arbitration is favored in Louisiana and under federal law. **Crosby**, 395 So.3d at 301. Arbitration is a substitute for litigation. **National Tea Co. v. Richmond**, 548 So.2d 930, 933 (La. 1989). The purpose of arbitration is settlement of

---

[3] On June 10, 2025, the Plaintiffs filed a motion to stay the ongoing arbitration pending resolution of their devolutive appeal in this court. On August 22, 2025, this court denied the motion to stay. Thus, the arbitration proceedings are moving forward in accordance with the Arbitration Agreement while this appeal is simultaneously being decided.

differences in a fast, inexpensive manner before a tribunal chosen by the parties. **Id.** By consensually substituting arbitration for litigation, the parties are presumed to accept the risk of procedural and substantive mistakes of either fact or law by the arbitrators, which mistakes are not reviewable by the courts. **Durr Heavy Construction, LLC v. Willow Grove – North, LLC**, 2024-0090 (La. App. 1st Cir. 8/6/24), 2024 WL 3665532, *5 (unpublished), writ denied, 2024-01106 (La. 1/14/25), 398 So.3d 650. Additionally, any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. **J. Caldarera & Co. v. La. Stadium & Exposition Dist.**, 98-294 (La. App. 5th Cir. 12/16/98), 725 So.2d 549, 551.

Notwithstanding the strong presumption in favor of arbitration, the arbitration clause or agreement which is sought to be enforced must have a "reasonably clear and ascertainable meaning" in order to enforce arbitration. **Kosmala v. Paul**, 569 So.2d 158, 162 (La. App. 1st Cir. 1990), writ denied, 572 So.2d 91 (La. 1991). Therefore, we begin our analysis by interpreting the language of the parties' contract to arbitrate, which will determine the parameters of the arbitrator's authority. See **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2017-0304 (La. App. 1st Cir. 12/6/18), 267 So.3d 633, 636, writ denied, 2019-0333 (La. 6/26/19), 275 So.3d 876 (arbitration is a matter of contract; the analysis begins with the language of the contract).

The Louisiana Civil Code provides that the interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. However, a doubtful provision must be interpreted in light

6

of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. Civ. Code art. 2053. These general contract principles govern the question of who is bound by an arbitration agreement; a party cannot be required to submit to arbitration any dispute that he has not agreed to submit. **Ciaccio v. Cazayoux**, 519 So.2d 799, 804 (La. App. 1st Cir. 1987). <u>See also</u> **Woodrow Wilson Const. Co., Inc. v. MMR-Radon Constructors, Inc.**, 93-2346 (La. App. 1st Cir. 4/8/94), 635 So.2d 758, 759, <u>writ denied</u>, 94-1206 (La. 7/1/94), 639 So.2d 1167.

The threshold inquiry is whether the parties have agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. **Crosby**, 395 So.3d at 301. <u>See also</u> **Southeast Dirt, L.L.C. v. D.R. Horton, Inc. – Gulf Coast**, 2024-0724 (La. App. 1st Cir. 12/27/24), 404 So.3d 90, 94. The first question as to whether a valid agreement to arbitrate exists is not actually in dispute in this case. PCCP and the Plaintiffs all actively participated in the negotiation and execution of the Arbitration Agreement. The Plaintiffs attached a copy of the July 18, 2023 Arbitration Agreement to its petition for declaratory judgment and PCCP attached a copy of the same Arbitration Agreement between the parties to its exception of prematurity.

As for the second question, PCCP argues that the scope of the Arbitration Agreement includes a delegation of all issues, including peremption, to be decided by the arbitrators pursuant to the American Arbitration Association ("AAA") rules, unless otherwise agreed by all parties through an amendment to the Arbitration Agreement. However, the Plaintiffs contend that the Arbitration Agreement did not cover perempted claims and, therefore, the trial court should have resolved the issue of peremption before compelling arbitration. To resolve this question, we must

7

examine the language of the Arbitration Agreement as a whole to determine what issues the parties agreed to arbitrate.

The pertinent portions of the Arbitration Agreement between PCCP and the Plaintiffs provide as follows, with emphasis added:

> WHEREAS, certain disputes have been raised by the [Army Corps] relating to the Project as described . . . (collectively, "the Disputes"); and
>
> * * *
>
> WHEREAS, for the sake of efficiency, **the Parties wish to arbitrate any Disputes that currently exist or may arise among them in a single arbitration proceeding, rather than litigating such disputes** or engaging in multiple arbitrations or other dispute resolution proceedings; and
>
> * * *
>
> THEREFORE, the Parties agree as follows:

> 1. This **Agreement is a binding and enforceable arbitration agreement** pursuant to the **Federal Arbitration Act** ["FAA"].

> 2. **Any Disputes among the Parties relating to the Project will be arbitrated to a panel of three arbitrators before JAMS.** Except as provided below, **the rules applicable to the arbitration shall be the American Arbitration Association ("AAA")** Construction Industry Arbitration Rules and Mediation Procedures ("Rules") **unless otherwise agreed by the Parties through an amendment to this Agreement executed by all Parties.**
>
> * * *

> 4. The filing of the arbitration is intended to preserve any claims that might be time-barred if the arbitration were not commenced, but is not intended to revive any claims that might be time-barred or expired prior to such filing. **This Agreement does not constitute an admission or acknowledgement of any fact or conclusion of law related to any statute of limitations or similar defense concerning the timeliness of asserting a claim.**
>
> * * *

> 7. **No party shall commence a legal proceeding against any other Party in any other forum relating in any manner to the Project while it remains a Party to this Agreement.**

> 8. **This Agreement shall be governed by the [FAA] and related federal law.** The applicable substantive law applicable to the Disputes, absent a different agreement of the Parties, shall be determined by their respective governing contracts or purchase orders or as otherwise be determined at law.
>
> * * *

> 12. **This Agreement is entered into by the Parties subject to a full reservation of their rights with respect to any claims or defenses that may exist or arise with respect to the Project** and their

8

respective rights and obligations thereto, including any contract to which they are a party.

\* \* \*

Once the parties enter into an enforceable Arbitration Agreement, it is as binding as the law upon them. **Parker v St. Tammany Parish Hosp. Service District**, 94-2278 (La. App. 1st Cir. 2/27/96), 670 So.2d 531, 534, <u>writ denied</u>, 96-0805 (La. 5/10/96), 672 So.2d 925. Where there is doubt, the general rule is that it should be resolved in favor of, not against, arbitration. **Id**. Additionally, when the parties expressly provide that the FAA and AAA rules govern the resolution of disputes between the parties, as in Paragraphs 1, 2, and 8 of this Arbitration Agreement, then the parties are empowering the arbitrator to decide challenges to the enforceability of the agreement and the overall arbitrability. AAA Rules provide that the arbitrator shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.[4] <u>See</u> **Florida Gas Transmission Company**, 267 So.3d at 636-637; **Jasper Contractors, Inc. v. E-Claim.com, LLC**, 2011-0978 (La. App. 1st Cir. 5/4/12), 94 So.3d 123, 133 (the explicit incorporation of rules that empower an arbitrator to decide issues of arbitrability serves as "clear and unmistakable evidence" of the parties' intent to delegate such issues to an arbitrator). <u>See also</u> **Florida Gas Transmission Company, LLC v. Texas Brine Company, LLC**, 2018-0075 (La. App. 1st Cir. 7/1/19), 285 So.3d 1093, 1098-1099, <u>writ denied</u>, 2019-01405 (La. 11/12/19), 282 So.3d 225.

In this case, the Plaintiffs argue that the issue of perempted claims affects the very validity of the Arbitration Agreement. In making this argument, the Plaintiffs rely on two cases: **Lemoine Company, LLC v. Durr Heavy Construction, LLC**, 2015-1997 (La. App. 1st Cir. 10/31/16), 206 So.3d 244, <u>writ denied</u>, 2016-2100 (La.

---

[4] The AAA Construction Industry Arbitration Rules and Mediation Procedures are available at https://www.adr.org/industries/construction. Rule 9 specifically discusses the jurisdiction of the arbitrator.

1/13/17), 215 So.3d 247, and **Boh Bros. Construction Co., LLC v. Cypress Bend Real Estate Development Company, LLC**, 2015-1996 (La. App. 1st Cir. 10/31/16), 206 So.3d 1131, writ denied, 2016-02099 (La. 1/13/17), 215 So.3d 255. Those cases held that where there is no explicit agreement to arbitrate the issue of peremption, a party cannot be compelled to arbitrate perempted claims. Additionally, those cases rely on Louisiana law that if a claim is perempted it is extinguished, leaving no existing claim for an arbitrator to consider and no binding agreement to enforce. We find **Lemoine** and **Boh Bros.** distinguishable, however, because both of those cases involved arbitration clauses embedded within subcontracts that were not separately and intentionally negotiated and agreed upon by all parties, as in the case *sub judice*. In this case, the Arbitration Agreement is a separate contract specifically negotiated between the parties, which expressly assigned any disputes related to the Project to be arbitrated pursuant to FAA and AAA rules, not Louisiana law.

The Arbitration Agreement explicitly provides that the parties will submit "Any Disputes among [them] relating to the Project" to arbitration. Furthermore, by entering into the Arbitration Agreement, the parties specifically agreed that they did not admit or acknowledge anything "related to any statute of limitations or similar defense concerning the timeliness of asserting a claim." The dispute over perempted claims is clearly connected to the merits of "Any Disputes" related to the Project, which is reserved by the Arbitration Agreement and must be raised as a defense in the arbitration proceedings. Thus, the overall validity of the Arbitration Agreement is not at issue here.

Moreover, the Arbitration Agreement expressly bars any party from commencing any "legal proceeding against the other party" in any forum other than arbitration "relating in any manner to the Project." Peremption is an issue/dispute/defense that is distinctly related to and arising out of the merits of any

10

claims associated with the Project.  See **Brown v. Kabco Builders, Inc.**, 2018-928 (La. App. 3rd Cir. 6/5/19), 274 So.3d 216, 225.  See also **Jung v. Couvillion**, 2007-1154 (La. App. 1st Cir. 2/20/08), 984 So.2d 838, 840-841 (when the existence of the arbitration agreement is not disputed, the determination of *the applicability of time limitations that deal with the merits of the controversy between the parties is a function for the arbitrator*).  By attempting to have the defense of peremption decided by the trial court by means of a declaratory judgment rather than by participating in the arbitration process, the Plaintiffs are attempting to thwart the basic purpose of the Arbitration Agreement to which they explicitly agreed.  See **Parker**, 670 So.2d at 536.  Therefore, we find that the parties are bound by the agreement they made to arbitrate any dispute related to the Project, including peremption.  The trial court did not err in sustaining the exception of prematurity and dismissing the Plaintiffs' claims against PCCP.

## CONCLUSION

For the reasons stated, we affirm the trial court's January 29, 2024 judgment sustaining PCCP's dilatory exception raising the objection of prematurity based on the Arbitration Agreement, and dismissing the Plaintiffs' petition for declaratory judgment without prejudice.  All costs of this appeal are assessed against the Plaintiffs, Stantec Consulting Services, Inc., V&A Consulting Engineers, Inc., and Patterson Pump Company.

**AFFIRMED**.

11